(C.D. 2079)

THE KRODER REUBEL CO., INC.
ALLTRANSPORT, INC. } *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 6, 1959)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* of counsel) for the plaintiffs.
*George Cochran Doub,* Assistant Attorney General (*Alfred A. Taylor,* trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: The importation in controversy consists of tubes one-half inch and 1 inch in diameter in 12-foot lengths, which is admittedly in chief value of brass, and is composed of an outer brass tube into which an iron tube has been permanently inserted. The importation is represented by collective exhibit 1–A.

The collector of customs classified the merchandise as articles in chief value of metal, and duty was imposed thereon at the rate of 22½ per centum ad valorem in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802.

Plaintiffs claim that the merchandise should have been classified in paragraph 381 of said act (19 U.S.C. § 1001, par. 381), as modified, *supra,* as seamless brass tubes, "since brass is the component material of chief value," and subjected to duty at the rate of 2 cents per pound.

It is alternatively claimed by plaintiffs that the outer brass tubes and the inner iron or steel tubes "should have been constructively segregated" and that the brass tubes should be classified in said paragraph 381 as seamless brass tubes, as above indicated, and the iron or steel tubes should be classified as such in paragraph 328 of said act (19 U.S.C. § 1001, par. 328), as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 116, T.D. 52462, and subjected to duty at the rate of 12½ per centum. Plaintiffs further suggest that—

* * * Since the brass tubes and the inner iron or steel tubes were not separately appraised, plaintiff believes that under the alternative claim the liquidation was illegal and void and that it should be set aside and the entry referred to a single judge for reappraisement.

The pertinent provisions of the statutes involved herein are set forth below—

Paragraph 397, as modified, *supra:*

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*       \*       \*       \*       \*       \*       \*

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

Woven wire fencing and woven wire netting, * * *

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Other (except slide fasteners and parts thereof) ____22½% ad val.

Paragraph 381, as modified, *supra*:

Seamless brass tubes and tubing_____ 2¢ per lb.

Paragraph 328, as modified, *supra*:

Finished or unfinished iron or steel tubes not specially provided for:
　If suitable for use in the manufacture of ball or roller
　　bearings _____ 17½% ad val.
　Other　_____ 12½% ad val.

Title 28, U.S.C. § 2636(d):

If upon the hearing of a protest, the court declares an appraisement of merchandise made after the effective date of the Customs Administrative Act of 1938 to have been invalid or void, it shall remand the matter to a single judge who shall determine the proper dutiable value of such merchandise in the manner provided by this chapter. In such proceeding no presumption of correctness shall attach to the invoice or entered values.

At the trial, the testimony of two witnesses for the plaintiffs and one for the Government was introduced. The testimony of one of plaintiffs' witnesses, Fritz Wust, was taken on order for a commission. He testified, in substance, that he represented the foreign manufacturer of the merchandise in controversy and, based upon his knowledge of the subject, described the method of manufacturing the instant merchandise in Germany as follows: The cold-rolled iron or steel strip is formed into a tube on a tube rolling machine. Brass tubes are also drawn to the required diameter and the desired wall thickness. The brass tube is then slipped over the iron tube by hand and both tubes are firmly united by a drawing process. Following the drawing process, the drawing head and the end of the tube are cut off and straightened to the desired length of 3.66 meters and consecutively polished and painted with a colorless lacquer. When the product is completed, the iron tube in both sizes has the same wall thickness as when inserted. The only materials used are iron and brass. No adhesive is used between the tubes nor is any heat applied to the material during or after the point where the iron tube is placed inside the brass tube. The tubes are neither welded nor fused together. The drawing process seemingly affects a permanent adhesion.

Plaintiffs' witness, Jacques Caspar De Jong, formerly an assistant to the president of The Kroder Reubel Co., Inc., one of the plaintiffs herein, and at present president of his own business, testified to his

familiarity with the imported merchandise over a period of about 20 years. He said he had seen merchandise represented by collective exhibit 1-A used by customers for making curtain rods, for table and chair legs for furniture in the furniture industry, and in the lamp industry as lamp stands, et cetera. To fit the product for those uses, it is cut to the required size, holes drilled, and is sometimes threaded, depending upon the particular purpose for which it is used.

Defendant's witness, Clarence E. Lockwood, testified that he was a salesman in the American Brass Co. and had been employed by that company since 1924. While he had never seen merchandise like exhibit 1-A produced, he testified that his company made a similar article known as a duplex tube, a combination of steel and a non-ferrous alloy, the alloy being either on the outside or the inside of the steel tube. In other words, in making the duplex tube, such as that referred to by the witness, one does not have two separate tubes as in the case of exhibit 1-A.

An examination of the testimonial record discloses no conflict with respect to the process of manufacturing the subject merchandise nor of its uses, and, there being no claim or proof of a commercial meaning different from the common meaning of the tariff terms in controversy, the issue resolves itself into two plain questions of law as to whether the imported commodity may properly be classified as seamless brass tubes or tubing, or separately as brass tubes or tubing and finished or unfinished iron tubes.

. We examined the various cases cited by adversary counsel in support of their respective contentions but find it unnecessary to analyze all of them here.

The decisions of the courts in the following cases are believed to be controlling of the issue herein and support the decision of the collector of customs.

Samuel H. Collom et al. v. United States, 6 Treas. Dec. 1021, T.D. 24844. In that case, the merchandise consisted of flexible metal tubing of three varieties, (1) iron, (2) copper exterior with internal tubing made of iron, and (3) iron exterior with internal tubing made of copper. It was claimed that the tubing comprising items 2 and 3 should. be classified either as tubes or pipes of iron or steel in paragraph 152 of the Tariff Act of 1897 or as copper pipes in paragraph 176 of said act. The court held that said articles—

- * * * are neither iron nor copper tubing, but tubing made of a combination of both classes of tubing * * *.

and hence did not fall within either paragraph 152 or paragraph 176. The court was of the opinion that—

\* \* \* The fact that the copper portion is of chief value is immaterial, for the provision is not for pipes in chief value of copper, but simply for copper pipes, and the articles in question are clearly not copper pipes or tubes. \* \* \*

It was held, therefore, that the articles represented by items 2 and 3 were properly classified as articles, in chief value of metal, in paragraph 193 of said act, citing *Seeberger* v. *Schlesinger*, 152 U.S. 581.

In *Hirsch & Co. et al.* v. *United States*, 4 Ct. Cust. Appls. 82, T.D. 33365, certain nickel-plated steel strips in coils were claimed by the importers to be dutiable as strips of steel in paragraph 124 of the Tariff Act of 1909 at the rate provided therein, plus an additional duty because coated with nickel. It appears from the decision of the court that in the article there under consideration steel constituted the body of one article and composed the greater bulk of the finished article, but nickel had relatively greater value, and the article was commercially known as strip steel, nickel plated.

In the course of its opinion, the court stated:

In answer to the question presented by the record it may be said that although the merchandise was strips of steel in its first estate, it nevertheless became something more than that when it was subsequently plated with nickel. This, of course, was done before importation. It can hardly be doubted that some change in the classification and assessment of the article must follow upon such a substantial change in its component materials, its use, and value. \* \* \*

Not being specifically provided for in their advanced condition, the articles were held to be properly classifiable in paragraph 199 of the Tariff Act of 1909 as articles of metal, not specially provided for, citing *Victor* v. *United States*, 128 Fed. 472, and *Eckstein* v. *United States*, 140 Fed. 94.

In *United States* v. *Sutherland International Despatch et al.*, 21 C.C.P.A. (Customs) 264, T.D. 46790, merchandise, described as patent silent window channels, composed of a brass channel and felt, the felt lining the inner surfaces of the channel, was considered by the court to be something more than brass channels, as those words are used in paragraph 381 of the Tariff Act of 1930, and was, therefore, properly classified by the collecter of customs in paragraph 397 of said act as articles, not specially provided for, in chief value of metal.

Following the comparable precedents of the above-cited cases, we find and hold that the imported tubes in the instant case are neither brass nor iron tubes or tubing and overrule the protest on all grounds and affirm the decision of the collector of customs.

Judgment will issue accordingly.