**J. GERBER & CO., Inc., et al.**
**v.**
**UNITED STATES.**
**C.D. 3773; Protest Nos. 65/8818–726, etc.**

United States Customs Court,
Third Division.
April 10, 1969.

Graubard, Moskovitz & McCauley, New York City (Alfred R. McCauley, Washington, D. C., of counsel), for plaintiffs.

William D. Ruckelshaus, Asst. Atty. Gen., (Dominick M. Minerva, New York City, trial attorney), for defendant.

Before RICHARDSON and LANDIS, Judges.

LANDIS, Judge:

These protests, consolidated for trial, involve steel forgings imported from

15. The Future of the Common Law, Harvard U. Press, pp. 120, 132–3.

Germany into the port of Jacksonville, Florida, from March 1964 through May 1966.

Plaintiffs contend they are dutiable at 10.5 per centum ad valorem under the following TSUS item classification, as entered, viz:

Forgings of iron or steel, not machined, not tooled, and not otherwise processed after forging:

608.25    Other than alloy iron or steel .........10.5% ad val.

rather than under the item classification determined by the collector, viz:

Pipe and tube fittings of iron or steel:

\*    \*    \*    \*    \*    \*    \*    \*

610.80    Other fittings ......................19% ad val.

———————◆———————

The articles in question are stipulated by the parties to consist of:

\* \* \* forgings of steel other than alloy steel, which have not been machined, tooled, or otherwise processed after forging, which forgings are in the shape of pipe or tube flanges, and are dedicated to use as flanges for pipes or tubes. [R. 2.]

Plaintiffs equate a flange with a fitting and agree that these flanges are dedicated to use as pipe fittings. (R. 9.)

On trial, satisfied that the facts stipulated, *supra,* raise a question of law as to the claimed classification under item 608.25 and the liquidation classification under item 610.80, plaintiffs introduced two exhibits and rested their case. Exhibit 1 is representative of the forgings in the condition imported. Exhibit 2 is a forging, produced in Germany, but agreed to be representative of the imported forgings after they are further processed in the United States.

Defendant adduced the testimony of Edwin W. Harvey, assistant port director, Jacksonville, Florida. He testified that, while still a customs examiner at the Jacksonville port in 1965, on advice from New York customs officials, he advisorily classified these forgings under item 610.80 on the strength of TSUS General Interpretative Rule 10(h). On cross-examination, Mr. Harvey stated that forging is the process of shaping metal to produce a desired shape. He had never seen a forging where the shape did not make obvious the intended use.

The interpretative headnotes are part of the substantive law of the tariff schedules. In its advance report on the tariff schedules, the Tariff Commission explained that:

An important feature of the proposed tariff schedules not found in the existing schedules is a system of interpretative headnotes which specify certain special rules of interpretation, define important terms, prescribe special procedures, and, in general, clarify the relationships between the various schedules, parts, and subparts and the classification descriptions incorporated therein. These headnotes replace cumbersome provisos and other provisions which intrude on the existing classification provisions and make their interpretation more difficult. Also, they contain much substantive matter presently buried in administrative and judicial rulings and in unwritten customs practices. The effort has been made to place these headnotes in closest proximity to the classification descriptions to which they relate. Thus, a headnote relating exclusively or primarily to classification provisions in a subpart is made a subpart headnote, a headnote relating

exclusively or primarily to classification provisions in a part is made a part headnote, a headnote generally applying to classification provisions within various parts of a schedule is made a schedule headnote, and the most general provisions of all are made general headnotes to the entire set of schedules. [Tariff Classification Study, Submitting Report To the President and to the Chairman of the Committee on Ways and Means of the House and the Committee on Finance of the Senate, November 15, 1960, at page 9, hereinafter Submitting Report.]

General Interpretative Rule 10(h) referred to in Mr. Harvey's testimony, provides that for the purposes of the Tariff Schedules:

(h) unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished;

The purpose of rule 10(h), which admittedly applies to every item in the tariff schedules (R. 12), is explained by the Tariff Commission as follows:

General headnote 10(h) specifies that, unless the context requires otherwise, a tariff description for an article covers such article whether assembled or not assembled, and whether finished or not finished. It is the present customs practice, under the doctrine of entireties, to treat the unassembled components of an article under the tariff provision for such article. In the existing schedules some tariff descriptions provide for an article "whether finished or unfinished" or with words of similar purport, and other tariff descriptions are silent on the question. This lack of uniform treatment has been the cause of some classification controversies and litigation. The proposed headnote will bring about desirable clarity and uniformity in this regard. [Submitting Report, page 19.]

The facts, thus delineated, indicate that these forgings, albeit not machined, not tooled, and not otherwise processed after forging under item 608.25 were in fact liquidated as pipe fittings described in item 610.80 perforce interpretative rule 10(h). The forgings are not finished.

■ Plaintiffs argue that headnote 10(h) is nothing more than what it purports to be, a rule of interpretation to include the unfinished form of an article which, classified independent of the rule, is not otherwise more specifically provided for in the tariff schedules. We shall take up the point, and why we consider it valid, in our discussion of the rule of relative specificity, a rule of construction, which both sides seem to feel is the ultimate answer to proper classification of these forgings. The substance of the rule of relative specificity is that where an article appears to be properly classifiable under two different tariff provisions, the proper classification is under that provision which describes the article more specifically. Sandoz Chemical Works, Inc. v. United States, 43 CC PA 152, C.A.D. 623. For the reasons hereinafter stated, we are of the opinion that these forgings are not described in TSUS item 610.80.

The judicially contrived relative specificity rule has been incorporated into General Interpretative Rule 10 as follows:

(c) an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it; but, in applying this rule of interpretation, the following considerations shall govern:

(i) a superior heading cannot be enlarged by inferior headings indented under it but can be limited thereby;

(ii) comparisons are to be made only between provisions of coordinate or equal status, i. e., between the primary or main superior headings of the schedules or between coordinate inferior headings which

are subordinate to the same superior heading;

Item 608.25 and item 610.80 are both part of schedule 6, part 2, subpart B. What we compare here then are the superior classification heading of item 608.25, *"Forgings of iron or steel, not machined, not tooled, and not otherwise processed after forging"* [emphasis supplied], and the superior heading of item 610.80, *"Pipe and tube fittings of iron or steel"* [emphasis supplied]. When we read the item 608.25 and item 610.80 superior headings, plaintiffs' point that interpretative rule 10(h) is not a primary classifying provision becomes quite clear. The interpretative rules are substantive rules of application only after it is initially determined that an article is or is not classifiable under a particular superior heading. Under General Interpretative Rule of relative specificity 10(c), we cannot read into the superior heading of item 610.80, *"Pipe and tube fittings of iron or steel"* [emphasis supplied], the words "unfinished" since, if superior headings "cannot be enlarged by inferior headings indented under it", for sure they cannot be enlarged by an interpretative rule when comparing provisions of coordinate or equal status. Since these forgings, as stipulated, fit the description in item 608.25 and, presumably, at least, fit the description of item 610.80, as liquidated, which of the superior headings is relatively the more specific as to these forgings in the condition imported?

The forgings in this case are not finished. They are specifically provided for in the context of the superior heading in item 608.25 of the tariff schedules. Rule 10(h), used to liquidate the forgings under item 610.80 is an interpretative rule for classification "unless the context [of the tariff description] requires otherwise". The rule, in our view, is not limited to the context of the tariff description selected in liquidation, but to the context of all the relevant tariff descriptions in the tariff schedules as may require otherwise. We note that under the superior heading for "Pipe and tube fittings of iron or steel",[1] there is also an inferior heading [not here in issue] indented under it for—

Cast-iron fittings, malleable:
    Not advanced in condition by operations or processes subsequent to the casting process:

The context of the inferior heading obviously would rule out application of interpretative rule 10(h). Similarly, we know of no reason why the context of the superior heading for item 608.25 should not have equal force.

The facts and issues here are not unlike those in United States v. Singer Manufacturing Company, 37 CCPA 104, C.A.D. 427, in which rough, unmachined castings of iron were held properly dutiable as castings of iron under paragraph 327 of the 1930 Tariff Act, as claimed, rather than as parts of machines, not specially provided for, under paragraph 372, as assessed by the collector. The

---

1. The text of schedule 6 of TSUS setting forth pertinent inferior and superior headings is as follows:

| | |
|---|---|
| | Pipe and tube fittings of iron or steel: |
| | Cast-iron fittings, not malleable: |
| | For cast-iron pipe: |
| 610.62 | * * * * * * * * |
| | Cast-iron fittings, malleable: |
| | Not advanced in condition by operations or processes subsequent to the casting process: |
| 610.70 | * * * * * * * * |
| 610.80 | Other fittings |

following paraphrase of what the court of appeals said on the facts and issues in *Singer* points up why it is apt. The facts in the case show that each of the rough forgings is of a particular form and intended for ultimate use as a pipe fitting, not, however, by reason of having been machined, tooled, or otherwise processed after forging, but solely because of the shape in which the articles were forged. (It would seem well to here repeat that the subject merchandise was not processed after forging.) On this record, we would have to doubt that forgings are ever made without a predetermined ultimate use which determines the form in which the forgings are made. While the forgings here involved are cast into form so as to be ultimately processed into pipe fittings, they have not been advanced in manufacture after being forged. They were imported in the condition in which forged, nothing having been done to them after they were forged.

■ It seems clear to us that item 608.25 refers to forgings as they first arrive in commerce in their rough forged condition, not machined, not tooled, and not otherwise processed after forging. The provision convinces us that forgings which might be regarded as unfinished pipe fittings are within item 608.25, provided they are not machined, not tooled, and not otherwise processed after forging. See Singer Manufacturing Company, *supra,* at page 107.

Plaintiffs' point that interpretative rule 10(h) might be applicable were these forgings machined, tooled, or otherwise processed after forging seems to us to be well taken. However, since it is stipulated that these forgings are not machined, not tooled, or otherwise processed after forging, there is no need to further discuss the point.

Defendant's suggestion that the term "pipe fittings" has a use connotation which is more specific than the descriptive provision for forgings, etc., General Chain & Belt Company v. United States, 46 CCPA 66, C.A.D. 698, is a general rule of construction, subject to the exception that it cannot be applied to merchandise which it appears Congress intended to be otherwise classified. M. Pressner & Co. v. United States, 42 CCPA 48, C.A.D. 568; United States v. H. Reeve Angel & Co., Inc., 33 CCPA 114, C.A.D. 324. As stipulated by the parties, the forgings here square with the forgings described in item 608.25. Defendant's argument that the forgings should be classified as pipe fittings is not, in our opinion, consistent with the intent manifested by Congress in the descriptive language of the competing classifications and in the interpretative headnotes as we discussed them above. There is no need to force a liquidation of these forgings under TSUS item 610.80 and General Interpretative Rule 10(h), as unfinished pipe fittings.

With regard to the timeliness of protest 66/44543, defendant's brief points out that it is untimely filed and should be dismissed. Plaintiffs, in their reply brief, interpose no objection. The entries of protest 66/44543 were liquidated on September 24, 1965. The protest was filed on July 8, 1966. To protest a liquidation more than 60 days after the liquidation is untimely. 19 U.S.C. § 1514. Protest 66/44543 is, therefore, severed from these consolidated cases and dismissed.

These consolidated protests are otherwise sustained.

Judgment will be entered accordingly.