(C.D. 3832)

J. C. De Jong & Co., Inc. v. United States

United States Customs Court, Second Division

(Decided May 27, 1969)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* of counsel) for the plaintiff.
*William D. Ruckelshaus,* Assistant Attorney General (*Harold L. Grossman* and *Velta A. Melnbrencis,* trial attorneys), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

NEWMAN, Judge: This case involves the proper tariff classification of merchandise comprised of an outer brass tube into which a steel tube has been permanently inserted. The imported items are concededly in chief value of steel, and were assessed with duty at the rate of 19 per centum ad valorem under the provision in item 657.20 of the Tariff Schedules of the United States (TSUS) for "other" articles of iron or steel, not coated or plated with precious metals.

Plaintiff claims that the merchandise is properly dutiable at the rate of 10.5 per centum ad valorem under the provision in item 610.49, TSUS, for pipes and tubes of iron or steel.

STATUTES INVOLVED

Classified under:

Tariff Schedules of the United States, Schedule 6, Part 3, Subpart G:
    Articles of iron or steel, not coated or plated with precious metal:
        Cast-iron articles, not alloyed:

           \*     \*     \*     \*     \*     \*     \*
        Other articles:

           \*     \*     \*     \*     \*     \*     \*
657.20      Other _____ 19% ad val.

Claimed under:

Tariff Schedules of the United States, Schedule 6, Part 2, Subpart B:
    Pipes and tubes and blanks therefor, all the foregoing of iron (except cast iron) or steel:
        Welded, jointed, or seamed, with walls not thinner than 0.065 inch, and of circular cross section:

           \*     \*     \*     \*     \*     \*     \*
        Other:
           Steel pipe conforming to the A.P.I. specifications for oil well casing \* \* \*:

              \*     \*     \*     \*     \*     \*     \*
          Other:

             \*     \*     \*     \*     \*     \*     \*
           Not suitable for use in the manufacture of ball or roller bearings:
             Other than alloy iron or steel:
              \* \* \* \* \* \* \*
610.49           Other _____ 10.5% ad val.

Other provisions:

Schedule 6. - METALS AND METAL PRODUCTS

    \*     \*     \*     \*     \*     \*     \*

PART 2. - METALS, THEIR ALLOYS, AND THEIR BASIC SHAPES AND FORMS

Part 2 headnotes:

1. This part covers precious metals and base metals (including such metals when they are chemically pure), their alloys, and their so-called basic shapes and forms, and, in addition, covers metal waste and scrap. Unless the context requires otherwise, the provisions of this part apply to the products described by whatever process made (i.e., whether rolled, forged, drawn, extruded, cast or sintered) and

whether or not such products have been subjected to treatments to improve the properties or appearance of the metals or to protect them against rusting, corrosion or other deterioration. These treatments include annealing, tempering, case-hardening and similar heat-treatments or nitriding; descaling, pickling, scraping, scalping and other processes to remove oxidation scale and crust; rough coating with oil, tar, grease, red lead, or other material to prevent rusting; polishing, burnishing, glazing, artificial oxidation, phosphatizing, and other finishing treatments; metallization by cementation, by electroplating, by immersion in a bath of molten metal, or by other means; coating with enamel, paint, lacquer, or other non-metallic substances; and cladding. * * *

\* \* \* \* \* \* \*

3. For the purposes of this part, unless the context requires otherwise—

\* \* \* \* \* \* \*

(e) the term *"pipes and tubes and blanks therefor"* covers tubular products, including hollow bars and hollow billets but not including hollow drill steel, of any cross-sectional configuration, by whatever process made, whether seamless, brazed, or welded and whether with an open or lock seam or joint.

Schedule 6. - METALS AND METAL PRODUCTS
PART 3. - METAL PRODUCTS

\* \* \* \* \* \* \*

Subpart G. - Metal Products Not Specially Provided For
Subpart G headnotes:

1. This subpart covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules.

### The Record

The items involved herein are comprised essentially of a steel tube within a brass tube. They were imported in 12 foot lengths with outside diameters of ½, ¾, 1, and 1½ inches. The wall thicknesses ranged from 0.035 to 0.055 inch, the largest diameter tube having the latter thickness.

The manufacturing process was as follows: In two different departments of the manufacturing plant, a rolled steel tube was produced and a seamless brass tube was drawn. The steel tube was then inserted into the brass tube and the combined tubes were processed through a machine known as a drawing bank. A cold drawing process mechanically reduced the diameter of the outer brass tube and closed the seam of the inner tube, so as to permanently unite the two tubes into one unit. Thereupon, it is impossible to separate the inner steel tube from the outer brass tube without destroying them, and they are inseparable unless purposely cut apart.

After the tubes had been put through the drawing machine and permanent adhesion created, the exterior (brass) was polished and lacquered, and the tubes were cut to 12 foot lengths, in which condition they were imported.

After importation, the tubes were used: in the lamp industry for making the standard for standing or floor lamps; in the furniture trade as dividers; in the drapery hardware business for making curtain rods; and in the making of clothes closet rods.

Plaintiff buys and sells the imported merchandise as steel tubes, brass clad or cased.

There is no dispute between the parties that the tubes: are in chief value of steel; are other than alloy steel; do not conform to the A.P.I. specifications for oil well casing; and are not suitable for use in the manufacture of ball or roller bearings.

### The Issue

The issue for determination is, therefore, narrowed to whether the merchandise comes within the statutory definition of tubes in headnote 3(e) of part 2, schedule 6, or is an article of steel within the purview of item 657.20.

Plaintiff contends that the imported merchandise is a "tubular product" and, consequently, falls within the definition of "tubes" in headnote 3(e) of part 2, schedule 6.

Defendant contends that the imported items are more than pipes or tubes; and are not the "so-called basic shapes and forms" covered by headnote 1 of part 2, schedule 6, the latter "referring to metals in their early manufacturing stages, before they reach a more advanced stage, that is, a final product." In essence, it is defendant's position that the imported articles are no longer basic shapes and forms, but consist of finished products manufactured from basic shapes and forms.[1]

We agree with plaintiff's contention and sustain its claim under item 610.49, TSUS.

There does not appear to be any legislative history relative to the provisions of the tariff schedules under consideration which is helpful to the court in resolving the issue presented in this case.

The definition of pipes and tubes in headnote 3(e) of part 2, schedule 6, *supra*, explicitly covers "tubular products" irrespective of the process by which they were made, their cross-sectional configuration, whether or not the metal therein has been subjected to various described treatments, whether they are seamless, brazed, or welded, or whether they have an open or lock seam or joint. Thus, *Webster's New International Dictionary*, Second Edition (1953), at page 2730, defines "tubular" as:

---

[1] Defendant has conceded (Brief, page 10) that the part 2 provisions would be applicable if the brass and steel tubes comprising the imported merchandise had been imported prior to manufacture into brass-cased steel tubes.

\* \* \* 1. Having the form of, or consisting of a tube or *tubes* \* \* \*. Also, made or provided with tubes. [Emphasis added.]

In view of the above authoritative definition of "tubular," there is no doubt that the imported items are "tubular products" within the common meaning of that term. They are not precluded from the statutory definition by reason of the process of manufacture, which consisted of producing a rolled steel tube with an open seam and a seamless brass tube, which were combined and then inseparably united by drawing the outer brass tube to a smaller dimension. Headnote 1 of part 2, schedule 6 makes it clear that the provisions of part 2 apply to the products described by whatever process made, including such finishing treatments as polishing and lacquering.

Further, assuming without deciding, that the defendant's interpretation of the phrase "basic shapes and forms" in headnote 1 of part 2, schedule 6 is correct (such phrase does not refer to finished or final products), we find that the merchandise was not advanced to the status of a finished product, but remained one of the "so-called basic shapes and forms." In their condition as imported, the 12 foot long tubes were not standards for lamps, curtain rods, clothes closet rods, nor other finished articles, but were merely material, viz., tubes, for making those articles.[2] Defendant's contention that the merchandise constituted final or finished products is without support in the record.

In support of its argument that the merchandise is more than a pipe or tube, defendant relies heavily upon *Kroder Reubel Co., Inc., et al.* v. *United States,* 42 Cust. Ct. 149, C.D. 2079 (1959). That case involved tubes produced in the same manner as those in the present case, and they were classified by the collector as articles in chief value of metal under paragraph 397 of the Tariff Act of 1930, as modified. In *Kroder Reubel,* the plaintiffs claimed that the tubes were properly dutiable as seamless *brass* tubes under paragraph 381 of the act, as modified, since brass was the component material of chief value. Alternatively, plaintiffs claimed that the merchandise "should have been constructively segregated" for classification purposes, the outer brass tubes being classifiable under paragraph 381, as modified, and the inner iron or steel tubes under paragraph 328, as modified. This court held that the tubes were neither "brass tubes and tubing" nor "iron or steel tubes," and consequently, were properly classified by the collector under paragraph 397, as modified.

We wish to emphasize, however, that in *Kroder Reubel* we did not hold that the items involved were not tubes, nor more than tubes (as argued by defendant), but merely found that they were neither *brass*

---

[2] In *Kroder Reubel Co., Inc.* v. *United States,* 42 Cust. Ct. 149, C.D. 2079 (1959), which defendant concedes involved merchandise produced in the same manner as that involved in the present case, Mr. De Jong testified that to fit the tubes for certain rods, lamp stands, etc., they were cut to the desired size, holes drilled, and sometimes threaded, depending upon the particular purpose for which they were used.

nor *iron* tubes or tubing. Indeed, our opinion referred to the items involved as "tubes." Hence, *Kroder Reubel* does not assist defendant in its contention that the merchandise in the present case is more than a tube.

Additionally, *Kroder Reubel* does not aid defendant's position for the reason that under item 610.49, TSUS, the component material of chief value is determinative of the classification of the tubes in this case, by virtue of General Headnote 9(f)(i), which provides as follows:

> 9. *Definitions.* For the purposes of the schedules, unless the context otherwise requires—
>
>      \*      \*      \*      \*      \*      \*      \*
>
> (f) the terms "of", "wholly of", "almost wholly of", "in part of" and "containing", when used between the description of an article and a material (e.g., "furniture *of* wood", "woven fabrics, *wholly of* cotton", etc.), have the following meanings:
>
> (i) "of" means that the article is wholly or in chief value of the named material;
>
>      \*      \*      \*      \*      \*      \*      \*

The imported tubes are concededly in chief value of steel, and in view of the foregoing general headnote, the brass component does not make them more than tubes of steel.

Finally, it is clear that for a product to be considered "more than" a tube, it should possess at least some nontubular component. For example, in *Baker Ice Machine Co., Inc.* v. *United States*, 4 Cust. Ct. 22, C.D. 274 (1940), the court held that certain galvanized steel pipe with aluminum fins was more than mere pipe, and hence was not dutiable as steel tubes under paragraph 328 of the Tariff Act of 1930. However, no portion of the merchandise in the present case has been identified as being nontubular. We, therefore, conclude that defendant's contention, that the imported merchandise is more than a tube, is without merit.

In view of the foregoing, we hold that the merchandise is properly classifiable as tubes of steel under item 610.49 of the Tariff Schedules of the United States, as claimed by plaintiff, and the protest is sustained.

Judgment will be entered accordingly.