(C.D. 3932)

O. A. BOTH CORPORATION *v.* UNITED STATES

United States Customs Court, Second Division

(Decided November 28, 1969)

*Walter E. Doherty, Jr.,* for the plaintiff.
*William D. Ruckelshaus,* Assistant Attorney General (*Steven R. Sosnov* and *Patrick D. Gill,* trial attorneys), for the defendant.

Donlon, Judge: These two cases, consolidated for purposes of trial, present once more the often litigated issue as to what are and what are not, for tariff purposes, the article *eo nomine* described as metallic flitters. The novel feature here is that the issue now arises under the Tariff Schedules of the United States, rather than under the older tariff acts. Inasmuch as there is in the tariff schedules, and for the first time, *eo nomine* provision both for certain metal flakes and for metallic flitters, and the two provisions are in different parts of schedule 6, there is presented here a statutory issue not found in prior cases.

Liquidation classification of both the copper and aluminum imported articles of these cases was under TSUS item 644.98, by classification of the articles as metallic flitters, with duty charged at the specific rate of 13.25 cents per pound. The protests filed by plaintiff claim classification as flakes; in protest 67/34439 as copper alloy flakes, dutiable at the rate of 11.275 cents per pound, and in protest 67/34378 as aluminum flakes, dutiable at 5.1 cents per pound.

The competing tariff provisions are as follows:

Schedule 6, Part 2.—Metals, Their Alloys, and Their Basic Shapes and Forms.

Subpart C:

Copper powders and flakes:

| | | |
|---|---|---|
| 612.55 | Flakes _____ | 11.275¢ per lb. |

Aluminum powders and flakes:

| | | |
|---|---|---|
| 618.40 | Flakes _____ | 5.1¢ per lb. |

Schedule 6, Part 3.—Metal Products.

Subpart C:

| | | |
|---|---|---|
| 644.98 | Metallic flitters_____ | 13.25¢ per lb. |

There is no controversy as to metal content. In protest 67/34378 it is aluminum. In protest 67/34439 it is a copper alloy; and the headnotes pertinent to copper state that, except where context requires otherwise, the term "copper" as used in the tariff schedules includes copper alloys.

The evidence before us comprises several exhibits and the testimony of two witnesses who testified for the plaintiff. The official papers are in evidence and they include reports of the Chief Chemist of the United States Customs Laboratory, at Boston, identifying samples of the imported flakes as being flitters.

There is testimony as to what flakes are and how they are manufactured, and as to differences between flakes and flitters. In brief, flakes are more dense than flitters, the density being 2½ to 3 times as

great. Flitters, being lighter, have a tendency to float in liquid, whereas flakes disperse in liquid. Flakes are irregular in shape; flitters are regular. In the manfacture of flitters, the metal is first made into foil and then cut. In the manufacture of flakes, the process is "ball milling" of the metal; that is, a spherical shaped mass of the base metal or alloy is fed into a mill and there pounded by steel balls into flakes.

The premise from which we necessarily proceed is that when Congress provided in the tariff schedules *eo nomine*, separately, for flakes and for flitters, there were intended two distinguishable classifications for two different articles of commerce, flakes and flitters. Whether or not these two articles of commerce were separately known when earlier tariff acts became law, Congress has told us that now they are known. Absent Congressional definition, our problem is to ascertain what Congress intended in recognizing this distinction.

We have been referred to no legislative history relative to the provisions of the tariff schedules under consideration that is helpful to us in resolving the issue here presented, and independent research has disclosed none.

While the competing enumerations are found in separate parts of schedule 6, with differing titles, we do not rely on that distinction, in view of the TSUS General Interpretative Rule 10(b), which provides that "the titles of the various schedules, parts, and subparts and the footnotes therein are intended for convenience in reference only and have no legal or interpretative signficance".

What is pertinent is that there is, as the instant record discloses, a degree of difference in the manufacture of "flakes" and "flitters". Such distinction in degree of manufacture, or machining, has been noted by this court in several cases.

Cited are:

*J. Gerber & Co., Inc., et al.* v. *United States*, 62 Cust. Ct. 368, C.D. 3773, 298 F. Supp. 516 (1969) (appeal pending).

*J. C. DeJong & Co., Inc.* v. *United States*, 62 Cust. Ct. 605, C.D. 3832 (1969).

*Burn Strauss, Inc.* v. *United States*, 62 Cust. Ct. 664, C.D. 3845 (1969).

In construing the Tariff Act of 1897, the Board of General Appaisers considered what flitters are and how they are made, in *Baer Brothers* v. *United States*, 4 Treas. Dec. 555, T.D. 23112, G.A. 4941 (1901); affirmed 7 Treas. Dec. 573, T.D 25181 (1903); and incorporated in its opinion testimony of record, as follows:

After the metal has been smelted and is in *sheet form* it is cut up into clippings, and after the metal in the shape of clippings is

under the hammer for about an hour or so, we get *flitters*, and if the clippings are kept under the hammer five or six hours longer then we get bronze powder. [P. 556; emphasis added.]

In *United States* v. *Meier*, 9 Treas. Dec. 69, T.D. 25973, 136 Fed. 764 (1905), affirming *Geo. Meier & Co.* v. *United States*, 128 Fed. 472 (1904), the Circuit Court of Appeals, Second Circuit, described how metallic flitters are made, as follows:

> * * * it appears that ingots of composition metal are put through rollers and further thinned down under a hammer until they become thin sheets, the "composition metal" of trade, the importer himself testifying that in trade, composition metal appears only in fine sheets or leaves. These thin sheets are cut into desired sizes, and from the shearings left over the merchandise in suit is produced. These shearings are first cut into small pieces with the scissors or a machine, and are then placed in a steel box, in which a stamp goes up and down, still further reducing the size of the pieces, although not to the condition of powder. * * * [P. 70.]

It is noted that item 644.98, metallic flitters, is found in subpart C of part 3, schedule 6, and that the descriptive title of subpart C is "Metal Leaf and Foil; Metallics"; that, moreover, foil is described in the subpart C headnote as being not over 0.006 inch in thickness.

Weighing the evidence before us, having in mind the long established judicial definition of flitters and the novel and separate tariff provision for flakes, we are of opinion that the articles before us are flakes and should be so classified.

We observe that the opinion of the chief chemist that these are flitters is not shown to be founded on scientific analysis within his professional competence. It appears to be an opinion as to tariff classification, a matter for the decision of the court.

Judgment will be entered for plaintiff sustaining the claim, in protest 67/34439, for classification as copper flakes under item 612.55, and in protest 67/34378, for classification as aluminum flakes under item 618.40.

All other protest claims are overruled.