**HERAEUS–AMERSIL, INC.,**
**Appellee/Cross-Appellant,**

v.

**The UNITED STATES,**
**Appellant/Cross-Appellee.**

**Appeal Nos. 86–602, 86–650.**

United States Court of Appeals,
Federal Circuit.

July 8, 1986.

---

John J. Mahon, Commercial Litigation Branch, Dept. of Justice, New York City, argued for appellant. With him on brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Washington, D.C. and Joseph I. Liebman, Atty. in Charge Intern. Trade Field Office, New York City.

Richard C. King, Fitch, King & Caffentzis, of New York City, argued for appellee. With him on brief was James Caffentzis, New York City.

Before RICH and DAVIS, Circuit Judges, and MILLER, Senior Circuit Judge.

DAVIS, Circuit Judge.

This is a consolidated appeal brought by the United States and Heraeus-Amersil, Inc. (Heraeus) from the memorandum opinion and order of the United States Court of International Trade,[1] holding that an established and uniform practice existed with respect to merchandise imported by Heraeus and also that the established and uniform practice was properly discontinued by the United States Customs Service (Customs) (notwithstanding the absence of publication in the Federal Register) because Heraeus had actual notice of the change in classification of the merchandise.[2] We affirm.

## I.

Heraeus imports merchandise known as fused quartz or fused silica in various shapes and sizes. From 1968 through November 1977, 300 entries were documented at the ports of Newark and John F. Kennedy International Airport (JFK). There is nothing in the record to suggest that identical or similar merchandise was imported at any port other than Newark or JFK. At least five import specialists were responsible for advisory classification of Heraeus' merchandise during that ten-year period. These import specialists uniformly classified the merchandise (depending upon shape) under item 540.11 of the Tariff

---

1. *Heraeus-Amersil, Inc. v. United States,* 617 F.Supp. 89, —— CIT —— (1985) (Carman, J.).

2. The relevant facts are contained in a stipulation of facts on which the trial court based its

Schedules of the United States (TSUS) [3] at 7.5% ad val., or item 540.41, TSUS,[4] at 7% ad val.

There is no evidence that the merchandise was ever classified differently prior to December 30, 1977. In 1977, however, a new Customs import specialist was placed at JFK. This import specialist made a new advisory classification resulting in the change in classification of Heraeus' merchandise to item 540.67, TSUS,[5] at 25% ad val.

The merchandise now at issue was imported from Germany during March through December 1976, and in April 1981, and was liquidated under item 540.67. Heraeus timely filed protests challenging the classification of the merchandise under that item, and claiming the existence of an established and uniform practice to classify such merchandise under item 540.11 or item 540.41. These protests were denied.

Heraeus then brought suit in the Court of International Trade contesting the classification of its merchandise under item 540.67, and arguing that, in the absence of a finding by the Secretary of the Treasury (Secretary), the court itself could find that an established and uniform practice existed to classify the merchandise under item 540.11 or item 540.41 within the meaning of § 315(d) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1315(d) (1982),[6] and that this established and uniform practice precluded classification at the higher rate of duty until Customs complied with the notice provision of § 1315(d), *supra*. The United States argued that the matter should be remanded back to the Secretary to make the necessary findings because the trial court lacked the authority to determine whether such a practice in fact existed. In the alternative, the Government contended that the new classification was valid because the § 1315(d) notice requirement is predicated upon a finding (absent here) by the Secretary of an established and uniform practice.

On cross-motions for summary judgment, the court first restated its earlier holding in *Heraeus-Amersil, Inc. v. United States*, 600 F.Supp. 221, 8 CIT —— (1984) (denying Heraeus' motion to dismiss in part), that an established and uniform practice could be shown, in the absence of a finding by the Secretary, by actual uniform liquidations. In that earlier opinion, the court had noted that "[e]arlier cases suggest that a section 1315(d) 'established and

decision on cross-motions for summary judgment.

**3.** Item 540.11, TSUS, as modified by T.D. 68–9, provides:

Glass, in the mass; glass, crushed, powdered or flaked (frostings); and waste or scrap glass; all the foregoing except glass provided for in items 540.21 and 540.27:
 Glass in the mass:
540.11 Containing over 95 percent silica by weight .............. 7.5% ad val.

**4.** Item 540.41, TSUS, as modified by T.D. 68–9, provides:

Glass rods, tubes, and tubing, all the foregoing not processed:
540.41 Containing over 95 percent silica by weight ................ 7% ad val.

**5.** Item 540.67 of the TSUS, as modified by T.D. 68–9, provides:
 Optical glass in any form, including blanks for spectacle lenses and for other optical elements; non-optical-glass blanks for corrective spectacle lenses; synthetic optical crystals in the form of ingots, segments of ingots, sheets, or blanks for optical elements; all the foregoing not optically worked; polarizing material, in plates or sheets, not cut to shape or mounted for use as polarizing optical elements;
 * * * * * *
540.67 Other optical glass and synthetic optical crystals; polarizing material ... 25% ad val.

**6.** Section 1315(d) of Title 19 United States Code (1982) provides:
 No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the Federal Register of notice of such ruling; but this provision shall not apply with respect to the imposition of anti-dumping duties or the imposition of countervailing duties under section 1303 of this title.

uniform practice' can be predicated on uniform classifications and liquidations at various ports over a period of time." *Id.* at 223. The court reasoned that the question whether an established and uniform practice existed would not have been considered in prior cases if the issue was not relevant to those courts' ultimate determinations. Also supporting the court's holding was a predecessor regulation to 19 C.F.R. § 177.-10(b) (1985) which evidenced Customs' understanding at one time "that section 1315(d) envisioned an 'actual' established and uniform practice." *Id.* at 224. Hearings before the House Ways and Means Committee likewise manifested the belief that the *de facto* existence of a uniform practice was of major importance to Customs. *Id.* For these reasons, the court denied the motion to dismiss in part and concluded that, in the absence of a finding by the Secretary, it could decide whether an actual uniform practice existed.

In the decision now under review the court also held that an actual established and uniform practice classifying Heraeus' merchandise under item 540.11 and item 540.41 existed despite the fact that the Secretary had not made a finding to that effect. *Heraeus-Amersil*, 617 F.Supp. at 93. The basis of the court's holding was "the classification [by Customs] of fused quartz/fused silica under items 540.11 and 540.41 span[ning] a period of at least 10 years. Over 300 liquidations at two ports under these item numbers have been documented. The parties have been unable to find any evidence of variant liquidations during the 10-year period or earlier." *Id.* The court distinguished, however, a classification based on an actual practice from one based upon a finding by the Secretary, and held that the former could be extinguished by the discontinuance of such a practice if known to the importer. *Id.* at 94–95. Here, such knowledge existed as of December 30, 1977.

Both sides have appealed to this court. The Government filed its appeal (No. 86–602) under 28 U.S.C. § 1295(a)(5) (1982) from the final decision of the trial court denying the higher duties for the items imported in 1976. Heraeus cross-appeals (in No. 86–650) under 28 U.S.C. § 1292(d)(1) (1982) from Judge Carman's certification of the question whether the established and unfair practice was changed by Customs, so far as Heraeus is concerned, on December 30, 1977. This court has accepted the cross-appeal by order of November 6, 1985.

Heraeus contends before us that (1) the actual existence of an established and uniform practice under § 1315(d) does not depend upon a determination by the Secretary; (2) the trial court properly found that such a practice in fact existed here; and (3) the trial court erred in holding that the established and uniform practice could be extinguished other than by compliance with the Tariff Act's publication requirement (§ 1315(d)). The Government argues that (1) the Act requires a finding by the Secretary, and in the absence of a finding, the trial court is powerless to make the determination itself, (2) assuming the court could make an established and uniform practice determination, Heraeus failed to demonstrate that one existed in this instance, and (3) assuming the court properly found that an established and uniform practice existed, it correctly held that the practice ended when the merchandise was initially liquidated at the higher rates. ·

## II.

The first issue is whether a court can find that an established and uniform practice exists in the absence of a finding by the Secretary to that effect. The United States both in its brief and at oral argument refuses to acknowledge that an established and uniform practice recognized by § 315(d) of the Tariff Act of 1930, as amended at 19 U.S.C. § 1315(d), *supra,* can exist pursuant either to a finding by the Secretary that such a practice exists *or* (when the Secretary fails to act on a request for such a finding) upon a judicial finding of an actual practice of liquidating a significant number of entries of particular merchandise at the same rates over an

extended period of time. The latter is the situation we have here.

██ In its protest dated August 10, 1978, Heraeus in effect requested the Secretary to make a finding that an established and uniform practice existed with respect to the then imported optical grade glass. The protest noted expressly that the change in classification of the merchandise was unwarranted because of the existence of "[a]n established and uniform practice ... to classify such merchandise under items other than item 540.67." The United States urges that this specific content of the protest did not amount to an official request upon the Secretary and was not sufficient to trigger the obligation of the Secretary to make a determination. The answer is that, in the absence of any language in the applicable regulations providing other procedures that importers should follow in requesting a finding by the Secretary, Heraeus' request constituted as specific a request and was as inherently reasonable as the law may properly demand. Under the present regulations, nothing more is required. *See Commonwealth Oil Refining Co. v. United States*, 332 F.Supp. 203, 209, 67 Cust.Ct. 155, 163 (1971), *aff'd on other grounds*, 480 F.2d 1352 (CCPA 1973). It is also reasonable to interpret the simple denial of that protest, not as a denial on the merits as to whether an established and uniform practice existed, but rather as the failure of the Secretary to act on the subject in any respect. If there had been a denial of the existence of such practice, it is most likely that something would have been said along that line.

██ When the Secretary thus fails to act upon a request to make a finding, the court can and should make that determination itself,[7] rather than remanding the matter back to the Secretary for further consideration. The underlying issue is the actual existence of an established and uniform practice. If such a practice existed, the Secretary should have found it to have existed. *Ditbro Pearl Co. v. United States*, 515 F.2d 1157, 1159, 62 CCPA 95, 97 (1975) (Markey, C.J., concurring).[8] Contrary to the United States' postulate that an established and uniform practice arises upon only a formal finding by the Secretary (or·a ruling published pursuant to 19 C.F.R. § 177.10(b) (1985)),[9] the courts have consistently made such findings where the actual existence of a uniform practice was at issue.[10] *See, e.g., Siemens America, Inc. v. United States*, 692 F.2d 1382, 1384, 1 Fed.Cir. (T) 9, 10 (1982) ("we agree ... that appellants have nevertheless failed to sustain their burden of proving that there existed an established and uniform practice"); *Commonwealth Oil Refining Co. v. United States*, 480 F.2d 1352, 1362–63, 60 CCPA 162, 176 (1973) ("Commonwealth has failed to come forth with affirmative, con-

---

**7.** Where the Secretary does act upon a request, deciding either that an established and uniform practice does or does not exist, that action cannot be disturbed "absent a clear abuse of discretion." *Rank Precision Indus. v. United States*, 660 F.2d 476, 480, 68 CCPA 78, 84 (1981).

**8.** *See Ditbro Pearl*, 515 F.2d at 1159–60, 62 CCPA at 98, where J. Miller (concurring) noted that "The 'key' issue is whether appellant sustained its burden of proving that the rate of duty contended for was applicable to its merchandise 'under an existing and uniform practice'."

**9.** 19 C.F.R. § 177.10(b) provides:

(b) *Rulings regarding a rate of duty or charge.* Any ruling regarding a rate of duty or charge which is published in the Customs Bulletin will establish a uniform practice. A published ruling may result in a change of practice, it may limit the application of a court decision, it may otherwise modify an earlier ruling with respect to the classification or valuation of an article or any other action found to be in error or no longer in accordance with the current views of the Customs Service, or it may revoke a previously-published ruling or a previously-issued ruling letter. No ruling published under the provisions of this section will have the effect of changing either an earlier published ruling or a practice established by other means by imposing a higher rate of duty or charge on an article unless the earlier ruling or practice has been determined to be clearly wrong.

**10.** As succinctly stated by the trial court in its first opinion in *Heraeus-Amersil*, "[o]ne must therefore conclude that the issue was meaningful to the determination. Otherwise, it would seem that the courts were engaging in useless formulations." 600 F.Supp. at 224.

vincing evidence of the existence of a long-established practice at Philadelphia"); *Biddle Sawyer Corp. v. United States*, 320 F.2d 416, 422, 50 CCPA 85, 92 (1963) ("[w]e find nothing in the testimony or in the exhibits which supports appellant's contention that there was an established and uniform practice"); *B.R. Anderson & Co. v. United States*, 201 F.Supp. 319, 328, 47 Cust.Ct. 215, 228 (1961) ("under such circumstances no established and uniform practice had been demonstrated to have existed"). If an established and uniform practice could exist upon only a finding by the Secretary, § 1315(d) would be rendered "a nullity in the hands of a Secretary choosing to refrain from ever making a finding." *Ditbro Pearl*, 515 F.2d at 1159, 62 CCPA at 97 (Markey, *CJ*, concurring).

In these previous cases, the judicial search for a uniform practice concentrated largely on evidence of uniform classification and liquidation of merchandise at various ports over an extended period of time. *Heraeus-Amersil, Inc. v. United States*, 600 F.Supp. at 223. In *Siemens America*, 692 F.2d at 1383-84, 1 Fed.Cir. (T) at 10, this court—assuming *arguendo* that a formal administrative finding was not a prerequisite to an established and uniform practice—considered and rejected Siemens America's argument that an unpublished letter ruling and "the subsequent liquidation of approximately 100 entries under [one] item" over a two-year period at one port—the port of New York—created such a practice. Siemens America failed to carry its burden of establishing the existence of an established and uniform practice, in part, because it did not establish that it was the sole importer of the merchandise or that the merchandise was imported solely at the port of New York. The court implied, however, that, with adequate proof, an established and uniform practice could be judicially found to exist. Although the appellant in *Washington*

*Handle Co. v. United States*, 34 CCPA 80 (1946), introduced evidence suggesting that the merchandise was imported for a two-year period solely at two subports, the court held that an established and uniform practice did not exist. The court noted that at the beginning and throughout the two-year period, "there was considerable uncertainty as to its proper classification." *Id.* at 86. Moreover, an investigation as to the proper classification was conducted during this period. The court intimated, again, that it might have reached a different conclusion in a less chaotic setting:

> we think it proper to say that 28 shipments of the instant imported materials at two subports, *under the circumstances here recited*, cannot properly be held to constitute an 'established and uniform practice' in respects with which we are here concerned.

*Id.* (emphasis added). Sufficient proof did exist in *Emil Deinert*, 9 Cust.Ct. 411, 412 (1942), in which the Customs Court found that an established and uniform practice existed where the merchandise was uniformly classified for a period of eight years.

On the basis of these consistent statements, we must conclude that, where the Secretary fails to respond to a request that he find the existence of an established and uniform practice, the courts can make that finding in his stead. Nothing in the text or legislative history of § 1315(d) prohibits that course.

### III.

Before the Court of International Trade, Heraeus submitted, and the United States did not challenge,[11] that over a ten-year period, at the only two ports at which the merchandise was imported, more than 300 entries were classified under item 540.-11 or 540.41 (depending upon shape). There is no evidence in the record of any

---

**11.** The United States now argues that an established and uniform practice can only arise where there are uniform liquidations throughout the United States. Thus, since the liquidations here occurred only in the New York region, no such practice existed. This contention runs counter to common sense—not all goods are imported throughout the country—and finds no support in the statute, legislative history, or prior case law.

liquidation of the merchandise under item 540.67 or any other item prior to December 31, 1977. During that ten-year period, there was never any doubt as to the proper classification. On this evidence, the court properly held that Heraeus successfully proved the existence of an established and uniform practice. There is no basis for determining otherwise.[12]

## IV.

 In its cross-appeal, Heraeus contends that the established and uniform practice of liquidating the merchandise under items 540.11 and 540.41 cannot be changed until publication pursuant to § 1315(d). Congress provided in § 1315(d) that

No administrative ruling resulting in the imposition of a higher rate of duty or charge *than the Secretary of the Treasury shall find to have been applicable* to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption ... prior to the expiration of thirty days after the date of publication in the Federal Register of notice of such ruling.

(emphasis added). In enacting this provision, Congress recognized that the importing community relies upon the existence of

established and uniform practices in conducting their business.[13] If the Secretary makes a finding that an established and uniform practice has existed, the Secretary should not revoke that practice prior to publication of notice to that effect in the Federal Register. By that means, the Secretary's change in the pre-existing practice (as he has established it or found it to be) is made known to all importers throughout the country. Similarly, where an established and uniform practice has been judicially found (because Customs refused to pass on that issue) to classify particular merchandise under a specific tariff provision, the importing community should be afforded a grace period to permit it to make business decisions in light of any new agency action changing that practice. Accordingly, where the merchandise was entered before the actual discontinuance of . the practice, the rate in existence at the time the merchandise was imported applies until notice of the change is given. As the trial court stated:

Customs may dispense with the publication requirement only after the practice has been discontinued and an importer is on actual or constructive notice of the discontinuance.

*Means*, 75th Cong., 1st Sess. 212–13 (1937) (statement of American Tariff League):

We recognize that this section is legislation to legalize that which has been the practice of the Department for a number of years, namely, where there has existed a uniform practice, sanctioned by the customs authorities for a number of years before a change of rate or classification is made by the Department, the Department will allow before placing the same in effect 30 days' notice after publication of such change. While we recognize the existence of this practice, it has been carried on, we may say, as a matter of executive leniency, but there has been no sanction of law.

*See also id.* at 132 (analysis submitted by Treasury Department):

The last sentence of the proposed amendment is a paraphrase of the present customs regulation which grant 30 days notice to importers and others before adverse administrative rulings resulting in a change in a uniform and established practice becomes effective. The fairness of such regulations is evident....

12. If we were to assume, contrary to all the probabilities, that Customs' simple denial of Heraeus' protest was intended as a denial of the existence of the asserted uniform and established practice, that administrative determination would have been, on the basis of the known and proved facts, an abuse of discretion.

Because this case is so clear, we need not now consider whether a trial court's determination of the existence *vel non* of an established and uniform practice is purely a question of fact or is a "mixed" question of law and fact.

13. Customs recognized this policy in a predecessor regulation to 19 C.F.R. § 177.10(b) which provided that "[i]f there is an established and uniform practice at the various ports," a higher duty rate could not be imposed without public notice. Customs Regulations of 1943, § 16.-10(a). It was thus "Customs' understanding, originally at least, that section 1315(d) envisioned an 'actual' established and known practice." *Heraeus-Amersil*, 600 F.Supp. at 224. *See also Customs Administrative Bill: Hearings on H.R. 6738 Before the House Comm. on Ways &*

*Heraeus-Amersil*, 617 F.Supp. at 95. However, it was not the intent of Congress when it enacted the § 1315(d) notice provision that, where the Secretary (though requested) failed to decide whether an established and uniform practice existed and that determination had to be made by the court, the lack of a published notice in the Federal Register would bar the application of an administrative change in rates even though the affected importer was specifically informed that Customs had changed its practice. The words of § 1315(d)—which relate solely to a change in duties found by the Secretary to have been imposed under an established and uniform practice—do not so provide, and we know of no sufficient reason why Congress would have desired substantially to prolong use of a formerly-employed rate known by the particular importer to have already been abandoned by Customs (which has not itself acknowledged the existence of that practice).[14]

 In this case, Heraeus had actual notice of the change in classification as of December 1977. The next group of importations involved here was entered in April 1981. If we accepted Heraeus' point that it is entitled to the application of the lower rates until Customs complies with the § 1315(d) notice provision of publication in the Federal Register, Heraeus could receive a windfall because the lower (putatively incorrect) rate would apply to the April 1981 merchandise even though Heraeus knew of Customs' change in classification three years earlier.[15] For these reasons, the Court of International Trade correctly determined that the entries entered before December 30, 1977 must be reliquidated under items 540.11 or 540.41 but not those entries entered after December 30, 1977.[16]

AFFIRMED.

---

**14.** We leave open the case of importers who are unaware of Customs' change, through individual action, in a previous uniform and established practice known to those importers as such but not acknowledged as such by Customs under § 1315(d).

**15.** Heraeus relies on a number of internal Customs' procedures for the argument that no deliberate change in a uniform and established classification practice could be made until certain internal steps were taken. One flaw in that proposition is that there is no *finding* that the agent who reclassified the merchandise was cognizant of the existence of the established and uniform practice.

**16.** As to those later entries, Heraeus remains free to challenge the correctness of item 540.67 on its own merits, if proper protests have been filed.