**IKO INDUSTRIES, LTD.,**
**Plaintiff–Appellee,**

v.

**The UNITED STATES, Defendant–Appellant.**

No. 96–1111.

United States Court of Appeals,
Federal Circuit.

Jan. 22, 1997.

the subject merchandise, other than the Armour Lock shingles, is more specifically described by Heading 4811, HTSUS, than Heading 6807, HTSUS, we affirm-in-part. However, because IKO's Armour Lock shingles are not rectangular and therefore cannot fall within the description of Heading 4811, we vacate-in-part.

James Caffentzis, Fitch, King and Caffentzis, New York City, argued, for Plaintiff-Appellee.

John J. Mahon, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, New York City, argued, for Defendant–Appellant. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Washington, DC, and Joseph I. Liebman, Attorney in Charge, International Trade Field Office, New York City. Of counsel on the brief was Edward N. Maurer, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, New York City.

Before ARCHER, Chief Judge, EDWARD S. SMITH, Senior Circuit Judge, and MICHEL, Circuit Judge.

Opinion for the court filed by Circuit Judge MICHEL. Dissenting opinion filed by Senior Circuit Judge SMITH.

MICHEL, Circuit Judge.

The United States ("the government") appeals the September 19, 1995 decision of the United States Court of International Trade, Slip op. 95–161, granting summary judgment to IKO Industries, Ltd. ("IKO") and holding that IKO had overcome the presumption of correctness attached to the United States Customs Service's ("Customs") classification of the subject merchandise under subheadings 6807.10.00 and 6807.90.00 of the Harmonized Tariff Schedule of the United States ("HTSUS") and had proven that the subject merchandise was properly classified under subheading 4811.10.00, HTSUS. Because the Explanatory Notes to Chapter 68 specifically exclude asphalted paper and because

## BACKGROUND

IKO imports two types of products: three varieties of paper-based, asphalt roll roofing and ten varieties of paper-based, asphalt shingles. With the exception of the Armour Lock shingle, the shingles are all rectangular. Both the roll roofing and the shingles are used as an exterior cover for roofs to protect the roofs against water damage and other environmental effects.

Customs classified the roll roofing as "Articles of asphalt or of similar material (for example, petroleum bitumen or coal tar pitch): In rolls ..." under 6807.10.00, HTSUS and the shingles as "Articles of asphalt or of similar material (for example, petroleum bitumen or coal tar pitch): Other ..." under 6807.90.00, HTSUS. On April 18, 1991, IKO filed a timely formal protest contending that the roll roofing and the shingles should be categorized as "Paper, paperboard, cellulose wadding and webs of cellulose fibers, coated, impregnated, covered, surface-colored, surface-decorated or printed, in rolls or sheets, other than goods of heading 4803, 4809, 4810, or 4818:[1] Tarred, bituminized or asphalted paper and paperboard ..." under 4811.10.00, HTSUS. The protest was denied by Customs on May 1, 1991.

IKO timely filed suit in the Court of International Trade. The parties filed a joint stipulation of facts and requested that the action be submitted for decision on stipulation in lieu of trial. The Court of International Trade treated the motion as one for summary judgment. In reaching its decision, the Court of International Trade noted that, at first glance, the term "articles of asphalt" may appear to encompass the roll

---

**1.** [These headings cover materials such as toilet or facial tissue stock, copying or transfer tissue papers, paper coated with kaolin, and miscellaneous materials including toilet paper, tablecloths and diapers.]

roofing and shingles, but that the products were more specifically described as "asphalted paper and paperboard," as the parties agreed that the products were "paper-based." Noting that General Rule of Interpretation 3 provides that headings with the most specific description shall be preferred to headings providing a more general description, the trial court found that subheading 4811.10.00 more specifically described the merchandise. The Court of International Trade further relied on General Rule of Interpretation 1, which provides that classification shall be determined according to the terms of the headings and any section or chapter notes, and on the fact that note 1(b) of Chapter 68 specifically excludes from Chapter 68 "[c]oated, impregnated or covered paper of heading 4810 or 4811 (for example, paper coated with mica powder or graphite, bituminized or asphalted paper)."

## ANALYSIS

### I.

■ We must first address the government's contention that Customs' classification of the roll roofing and shingles as "articles of asphalt" under Heading 6807 is entitled to a statutory presumption of correctness and an appropriate degree of deference. The government cites to *Goodman Manufacturing, L.P. v. United States,* 69 F.3d 505 (Fed.Cir. 1995), in support of its argument. However, as expressly pointed out in *Goodman* and as the government admits, where, as here, there is no factual dispute between the parties, the presumption of correctness is not relevant. 69 F.3d at 508. In cases such as *Goodman,* the issue then becomes whether "Customs's decision is based on a permissible construction of the trade statutes." *Id.* (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)). The government thus argues that "[t]he basis for Customs' classification under Heading 6807, HTSUS, is that when the amount of asphalt coating on a paper substrate is as great as it is on the imported roll roofing and shingles, the articles are properly characterized as articles of asphalt rather than as articles of asphalted paper which is an entire-

ly rational interpretation of the statutory provisions in issue."

■ The government's reliance on *Goodman* is misplaced. *Goodman* did not involve a classification dispute but rather a dispute regarding the proper valuation of privileged steel transferred from a manufacturer's foreign trade subzone into the domestic market. As the Court of International Trade previously stated:

> The Court also rejects defendant's argument that the Court should uphold Customs' classification because the agency based its classification on a reasonable interpretation of subheading 4010.91.15. Defendant's argument is meritless because it misconstrues the Court's role in Customs classification cases. In such cases, the Court conducts a trial *de novo.* Although Customs' decisions enjoy a presumption of correctness, the Court's duty in reviewing a classification determination "is to find the *correct* result. . . ." Implicit in this function is the Court's responsibility to exercise its own judgment as to what is the proper classification of the merchandise under review.

*Semperit Indus. Prods., Inc. v. United States,* 855 F.Supp. 1292, 1299 (Ct. Int'l Trade 1994) (citations and footnotes omitted). We therefore review de novo the trial court's decision regarding the scope of the various headings at issue here, but review the factual question of whether the imported items are within the scope of the various headings under the clearly erroneous standard. *Medline Indus., Inc. v. United States,* 62 F.3d 1407, 1409 (Fed.Cir.1995); *see also Trans–Border Customs Serv., Inc. v. United States,* 76 F.3d 354, 357 (Fed.Cir.1996) ("The Court of International Trade's grant of summary judgment for the Government is based on its interpretation of the Harmonized Tariff Schedule of the United States. . . . This is a question of law which this court reviews anew.") (citation omitted); *Totes, Inc. v. United States,* 69 F.3d 495, 497–98 (Fed.Cir.1995) ("The meaning of a tariff classification term is also a question of law, which we review *de novo.*"). As the parties have stipulated to the facts in this case and as the only dispute turns on

whether the subject merchandise is paper coated with asphalt or an article of asphalt, the issue turns solely upon the proper legal interpretation of the relevant headings, as guided by the general rules of interpretation.

## II.

█ Turning to the merits, we agree with the trial court that all of the subject merchandise, other than the Armour Lock shingles, is properly classified under Heading 4811. HTSUS General Rule of Interpretation 1 provides that classification shall be determined according to the terms of the headings and any relevant section or chapter notes. Heading 4811 refers specifically to paper that has been "coated, impregnated, [or] covered" and formed into rolls or sheets, whereas Heading 6807 refers generally to "[a]rticles of asphalt or of similar material." Here, the merchandise, which is undisputedly a paper-based product that has been coated and impregnated with asphalt, could conceivably fall under either heading, as admitted by the government.

Chapter Note 1(b) of Chapter 68, however, specifically excludes "[c]oated, impregnated or covered paper of heading No. 48.10 or 48.11 (for example, paper coated with mica powder or graphite, bituminized or asphalted paper)." The question then becomes whether the subject merchandise falls within the definition of asphalted paper. One dictionary defines the term "asphalt paper" as a "paper that is coated or impregnated with asphalt." McGraw–Hill Dictionary of Scientific and Technical Terms 110 (2d ed. 1978). As the parties stipulated that the subject merchandise is paper-based and coated and impregnated with asphalt, this note excludes the subject merchandise from the scope of Heading 6807. Additionally, the Explanatory Note to Heading 6807[2] states that the heading excludes "[p]aper merely coated, impregnated or covered with tar or similar material, intended for use as, for example, wrapping paper (heading 48.11)." While it is true that IKO's products are not intended for use as wrapping paper, the subject merchandise is paper that has been coated and impregnated

with asphalt, a material similar to tar. Likewise, while it is true that the Explanatory Notes to Heading 6807 state that the heading includes "[r]oofing boards consisting of a substrate (e.g., of paperboard, of web or fabric of glass fibre, of fabric of man-made fibre or jut, or of aluminum foil) completely enveloped in, or covered on both sides by, a layer of asphalt or similar material," we agree with the Court of International Trade that the term "roofing board" suggests a stiff and rigid material, unlike the subject merchandise. Although we were unable to find a definition of the term "roofing board," the term "board" is used to describe a stiff material. For example, the Oxford English Dictionary defines "board" variously as a "piece of timber sawn thin," a "flat slab of wood fitted for various purposes, indicated either contextually, or by some word prefixed, as *ironing-board, knife-board,* etc.," and a "kind of thick stiff paper." 2 Oxford English Dictionary 338–39 (2d ed. 1989). Thus, the Chapter Notes and Explanatory Notes to Chapter 68 indicate that the scope of Chapter 68 cannot be interpreted broadly enough to cover the subject merchandise.

Moreover, nothing in the notes to Chapter 48 would eliminate the subject merchandise from that chapter. While it is true that Chapter Note 1(*l*) excludes abrasive paper or paper-backed mica, the government does not allege that the merchandise falls within either of the Headings for such abrasive paper or paper-backed mica. Additionally, although the government argues that at some point so much asphalt is added to the paper to create an article of asphalt rather than paper, Chapter Note 1(f) makes such a distinction but only for paper coated with plastic. Thus, the chapter does not include "one layer of paper or paperboard coated or covered with a layer of plastics, the latter constituting more than half the total thickness." However, the Chapter Notes do not make such a distinction regarding paper coated with asphalt. Although the Explanatory Notes to Chapter 48 provide several examples of coated paper and impregnated paper, none of which specifically include the

---

**2.** Explanatory Notes, while not binding or dispositive, may be instructive. *Marubeni America*

*Corp. v. United States,* 35 F.3d 530, 535 n. 3 (Fed.Cir.1994).

merchandise at issue, there is no indication that the list of examples is exclusive. Moreover, the examples do include paper coated with asphalt and paper coated with tar. Thus, the headings and notes suggest that the subject merchandise is properly classified under Heading 4811.

Our result is further supported by General Rule of Interpretation 3(a), which provides that, when goods are classifiable under two or more headings, the heading which provides the more specific description is preferred over a heading providing a more general description. *See Medline*, 62 F.3d at 1409 n. 1 ("Because Heading 6302 of HTSUS provides the most specific provision for the imported drawsheets and therefore prevails over Heading 6304 and Heading 6307 of HTSUS, we do not address whether the drawsheets could be properly classified under either of these provisions."); *Marubeni*, 35 F.3d at 536 ("If the Pathfinder satisfies the requirements of 8703 HTSUS, there is no need to discuss 8704 HTSUS because under the General Rules of Interpretation (GRI) when an article satisfies the requirements of two provisions, it will be classified under the heading giving a more specific description, here 8703 HTSUS."). Although the trial court erred by apparently comparing a subheading with a heading, any such error was harmless. Here, there can be no real dispute that Heading 4811 is more specific that Heading 6807. Heading 4811 describes not only the type of material (paper, paperboard, etc.) but also the treatment to which the material is exposed (coated, impregnated, covered, etc.) and the shape of the article (rolls or sheets). Heading 6807, on the other hand, describes only the type of material (asphalt or similar material). Thus, the subject merchandise is properly classified under Heading 4811.

Turning to the Armour Lock shingles, the government argues that the trial court's decision regarding the Armour Lock shingles is erroneous even if subheading 4811.10.00 were applicable, because these particular shingles are not rectangular in shape. IKO agrees and has abandoned its claim as to that specific article. We therefore vacate that portion of the trial court's decision.

*AFFIRMED–IN–PART, VACATED–IN–PART.*

#### COSTS

Each party to bear its own costs.

EDWARD S. SMITH, Senior Circuit Judge, dissenting.

I respectfully dissent because I disagree with the majority's classification of the shingles and roll roofing at issue under the HTSUS. The majority finds that the application of GRI 1 to these tariff classifications mandates the classification of products at issue under heading 4811. When the function of the merchandise is considered, it becomes clear that the shingles are properly classified under heading 6807.

Heading 4811 describes paper that has been "coated, impregnated, [or] covered" and formed into rolls or sheets, while 6807 classifies "[a]rticles of asphalt." Chapter Note 1(b) of Chapter 68 specifically excludes "[c]oated, impregnated or covered paper of heading No. 48.10 or 48.11 (for example, ... asphalted paper)." At first blush, it seems that the products in question could be classified under either heading, so the classification must turn on the definition of "asphalted paper."

There is a point where paper treated with a material can no longer be described as treated paper, and becomes an article whose essence is the treating material. While the majority would classify this merchandise as *paper* coated with asphalt, the products are more accurately described as *articles of asphalt* with a paper substrate. The asphalt provides the product's waterproofing capabilities and the paper, which makes up only 11–13% of the product, merely serves as a carrier for the asphalt. Asphalt is rarely used in its pure form to waterproof roofs—some substrate is typically required. While paper provides this necessary function in the products at issue, it is the asphalt that provides the dominant characteristics of the products.

Therefore, at some point, when paper is no longer a significant component of the product, it must cease to be classified as a paper product. While not binding, the *Explanato-*

*ry Notes* ("*Notes*") to heading 6807 also imply the existence of such a "crossover point." The *Notes* state that heading 6807 excludes "[p]aper merely coated, impregnated or covered with tar or similar material, intended for use as, for example, wrapping paper (heading 4811)." By describing materials that are properly classified under heading 4811 as "[p]aper *merely* coated ...," the drafters of the *Notes* evidence an intent to classify paper products under 4811 that have not reached the crossover point and taken on the characteristics of the treating materials.

The *Notes* to Chapter 68 further support the government's claim that these products have crossed the line into heading 6807 in contemplating the functionality of the products under the respective sections. While the *Notes* suggest that products properly classifiable under section 4811 include "wrapping papers," the *Notes* to heading 6807 state that that heading includes "[r]oofing boards consisting of a substrate (e.g., of paperboard, of web or fabric of glass fibre, of fabric of man-made fibre or jute, or of aluminum foil) completely enveloped in, or covered on both sides by, a layer of asphalt or similar material." Clearly, the function of the products at issue here is more akin to the function of products properly classifiable under heading 6807 than to "wrapping paper."

The majority does not contend that Chapter 68 can never encompass any asphalted paper felt, but that the *Explanatory Notes* preclude classification of the shingles and roll roofing at issue under heading 6807 because the term "roofing boards" suggests products that are stiff and structural. The substrates set forth in the *Note* (i.e. paper, fiberglass, jute, aluminum foil) hardly suggest load-bearing potential. Whether rolled or cut into shingles, these products are significantly stiffer than paper, and hence their description as "boards" is not completely inappropriate. Moreover, the majority's argument is inconsistent with their willingness to classify the non-rectangular Armour–Lock shingles under heading 6807, even though they are no more rigid than the other shingles at issue. After this requirement of rigidity is set aside, roof coverings of the type in question here are clearly properly classified under heading 6807.

### Conclusion

Because the products at issue have "crossed the line" from classification as paper products under heading 4811 to articles of asphalt under heading 6807, application of headings and chapter notes along with the support of the *Explanatory Notes* mandates classification of the products under the latter provision. Therefore, I would reverse the decision of the Court of International Trade and reinstate Customs' original ruling.