**INTERNATIONAL BUSINESS MACHINES CORPORATION, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**Slip Op. 97–78.
Court No. 94–04–00215.**

United States Court of International Trade.

June 18, 1997.

---

Baker & McKenzie, Washington, DC (William D. Outman, II), for plaintiff.

Frank W. Hunger, Assistant Attorney General, Washington, DC; Joseph I. Liebman, Attorney–in–Charge, New York City, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (John J. Ma-

hon); Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service (Mark G. Nackman), of counsel, for defendant.

## MEMORANDUM AND ORDER

GOLDBERG, Judge:

This matter is before the Court on the parties' cross-motions for summary judgment. Plaintiff, International Business Machines Corporation ("IBM"), challenges the classification by the United States Customs Service ("Customs") of imported Device Function Controllers ("Controllers") and Direct Access Storage Drives ("Drives") as "office machines not specially provided for," under Item 676.30 of the Tariff Schedules of the United States ("TSUS"), with a duty rate of 3.7% *ad valorem.*

IBM claims that Customs had an established and uniform practice of classifying the subject goods as "parts of automatic data-processing machines and units thereof, other than parts incorporating a cathode ray tube," under Item 676.54, TSUS, and was therefore required to provide notice before it reclassified them under 676.30, TSUS. *See* 19 U.S.C. § 1315(d) (1988). In the alternative, IBM argues that the goods cannot be classified under 676.30, TSUS, and that they should therefore be allowed to enter duty-free under Item 676.54, TSUS.

The Court finds that Customs was not required to provide notice to IBM before it reclassified the subject Controllers and Drives because there was no established and uniform practice. The Court further finds that, through the application of General Rule of Interpretation 10(h), Customs correctly classified the subject Controllers and Drives as unfinished "office machines not specially provided for" under 676.30, TSUS.

The Court exercises jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988).

## BACKGROUND

The subject merchandise consists of Device Function Controllers, model nos. 7777–A01, 9335–A01, 9335–A02, and Direct Access Storage Drives, model nos. 7777–B01 and

9335–B01, that entered the United States between July 1, 1986 and December 28, 1988. Pl.'s Stmt. of Facts No. 2 at 1, No. 18 at 4; Def.'s Resp. to Pl.'s Stmt. of Facts No. 2 at 1, No. 18 at 3. Both the Controllers and the Drives are designed for, and are used in, an IBM model 9335 Direct Access Storage System ("DASS"). The DASS provides fixed-disk storage for an automatic data-processing system, IBM model 9370, IBM A/S 400. Pl.'s Stmt. of Facts No. 7 at 2; Def.'s Resp. to Pl.'s Stmt. of Facts No. 7 at 1–2. The DASS consists of one Controller and from one to four Drives, housed in an IBM model 9309 Rack Enclosure. *Id.*

Both parties agree that the subject Controllers and Drives are designed to be ultimately mounted in a rack enclosure, and that they are imported without this rack. Pl.'s Stmt. of Facts Nos. 8–10 at 2; Def.'s Resp. to Pl.'s Stmt. of Facts Nos. 8–10 at 2. The parties also agree that, in the condition in which they are imported, the Controllers and Drives contain all of their main components, lacking only cable carriers, slide assemblies required for the rack-mounting, and a base for fixing or placing them on a table, desk, wall, floor, or similar place. Pl.'s Stmt. of Facts No. 5 at 2, No. 16 at 4; Def.'s Resp. to Pl.'s Stmt. of Facts No. 5 at 1, No. 16 at 2.

From approximately April, 1985 until December, 1986, Customs liquidated the Controllers and Drives imported by IBM at the Port of Minneapolis, Minnesota as "parts of automatic data-processing machines," duty-free under Item 676.54, TSUS. Pl.'s Stmt. of Facts No. 12 at 3; Def.'s Resp. to Pl.'s Stmt. of Facts No. 12 at 2. Thereafter, however, Customs liquidated entries of the subject Controllers and Drives as "office machines," at a duty rate of 3.7% *ad valorum* under Item 676.30, TSUS. Pl.'s Stmt. of Facts No. 14 at 3; Def.'s Resp. to Pl.'s Stmt. of Facts No. 14 at 2. Opposing this change in classification, plaintiff filed forty-eight protests with Customs. Customs denied their protests, and plaintiff subsequently filed this action to contest these denials. Pl.'s Stmt. of Facts No. 18 at 4; Def.'s Resp. to Pl.'s Stmt. of Facts No. 18 at 3.

## STANDARD OF REVIEW

When faced with a motion for summary judgment, the Court first determines whether the case presents any genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). If the Court finds that the case lacks genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law, then the Court may grant summary judgment. USCIT R. 56(d).

The two issues that IBM raises do not challenge the factual basis underlying Customs' actions, but instead challenge how Customs interpreted 19 U.S.C. § 1315(d) and the relevant headings and General Rules of Interpretation of the TSUS. These issues, therefore, do not present any genuine issues of material fact, and the Court may grant summary judgment. USCIT R. 56(d). *See also Thomas Equip. Ltd. v. United States* 881 F.Supp. 611 (CIT 1995) (granting summary judgment in an established and uniform practice case); and *IKO Indus. Ltd. v. United States,* —— Fed. Cir. (T) ——, 105 F.3d 624 (1997) (granting summary judgment when the sole issue is whether Customs properly interpreted tariff schedule).

To decide the present cross-motions for summary judgment, the Court first considers whether the classification applied by Customs accurately describes the subject Controllers and Drives. *Jarvis Clark Co. v. United States,* 2 Fed. Cir. (T) 70, 75, 733 F.2d 873, 878 (1984). The Court then considers whether the classification proposed by IBM better describes the Controllers and Drives. *Id.*

The Court notes that Customs' chosen classification is not entitled to a presumption of correctness because the issues are legal, not factual. *Universal Elect. Inc. v. United States,* —— Fed. Cir. (T) ——, ——, 112 F.3d 488, 493 (1997); *Goodman Mfg. L.P. v. United States,* —— Fed. Cir. (T) ——, ——, 69 F.3d 505, 508 (1995); *IKO,* —— Fed. Cir. (T) at ——, 105 F.3d at 626–27.

## DISCUSSION

IBM challenges Customs' classification on two levels. First, IBM argues that Customs lacked the statutory authority to reclassify the subject imports without first providing notice because Customs' prior actions created an established and uniform practice ("EUP") under 19 U.S.C. § 1315(d). Second, and in the alternative, IBM argues that even if Customs had the authority to reclassify the subject Controllers and Drives, Customs nevertheless improperly classified them under 676.30, TSUS. According to IBM, Customs should have continued to classify the subject Controllers and Drives under 676.54, TSUS, because that classification better describes these imports. The Court is unpersuaded by either of IBM's arguments, and addresses each in turn below.

### I. Under 19 U.S.C. § 1315(d), Customs Was Not Required To Provide Notice Before It Reclassified The Subject Controllers And Drives Under Item 676.30, TSUS, Because There Was No Established And Uniform Practice.

IBM argues that before Customs reclassified the subject Controllers and Drives as "office machines," under Item 676.30, TSUS, Customs had an established and uniform practice of classifying the same Controllers and Drives as "parts of automatic data-processing machines," under Item 676.54, TSUS. As a result, IBM claims that pursuant to 19 U.S.C. § 1315(d), Customs was required to provide notice before it changed how it classified the subject Controllers and Drives.

■■■ An EUP may be created either by a finding of the Secretary of the Treasury ("Secretary") or by a finding of a court.[1] *Heraeus–Amersil, Inc. v. United States*, 4 Fed. Cir. (T) 95, 98–99, 795 F.2d 1575, 1580–81 (1986). IBM concedes that the Secretary has not made such a finding, thus the Court focuses only on whether the facts here support a judicial finding of an EUP.

■■■ IBM offers three grounds upon which this Court could make a judicial finding of an EUP for the classification of the subject Controllers and Drives. First, IBM asserts the existence of an EUP by pointing to the length of time during which Customs classified the subject merchandise under Item 676.54, TSUS. Second, IBM asserts that the existence of an EUP is substantiated by a statement of a National Import Specialist, noting that Customs has consistently classified the subject merchandise as parts of office machines. Third, IBM claims that there was an EUP due to the length of time that elapsed from the moment when Customs first considered classifying the subject merchandise under Item 676.30, TSUS, instead of Item 676.54, TSUS, until there was a final ruling supporting the new classification.

Although these factors are germane, they do not constitute an EUP because they do not evidence a uniform classification and liquidation of the subject imports at various ports over an extended period of time. The Controllers and Drives at issue in this case were uniformly classified and liquidated for only twenty months, April, 1985 to December, 1986, and only at one port, Minneapolis, Minnesota. *See Washington Handle Co. v. United States*, 34 C.C.P.A. 80 (1946) (finding that the uniform classification and liquidation of merchandise at two ports during the period of two years was insufficient to prove the existence of an EUP); *Siemens America, Inc. v. United States*, 1 Fed. Cir. (T) 9, 692 F.2d 1382 (1982) (finding that the uniform classification and liquidation of one hundred entries at one port over two years was insufficient to prove the existence of an EUP). Because the Court finds that Customs' actions during this period do not qualify as an EUP, the Court concludes that plaintiff was

---

**1.** Before a court may make a judicial finding of an EUP, an importer must first exhaust its administrative remedies by requesting the Secretary to find an EUP, and the Secretary must fail to act. *Dow Chemical Co. v. United States*, 10 CIT 550, 560, 647 F.Supp. 1574, 1583 (1986). However, the applicable statute does not provide a procedure that importers should follow when they request a finding by the Secretary. *See* 19 U.S.C. § 1315(d). Nevertheless, the Court finds that IBM's protests constitute such a request because they clearly claim that an EUP for the classification of the subject Controllers and Drives existed. The Court further finds that when Customs denied the protests, the Secretary failed to act on IBM's requests. Consequently, the Court may make a finding of an EUP.

not entitled to notice pursuant to 19 U.S.C. § 1395(d) before Customs began to reclassify the subject merchandise under Item 676.30, TSUS.

## II. The Subject Controllers And Drives Are Properly Classified Under Item 676.30, TSUS, As Unfinished "Office Machines," Not Specially Provided For.

■ Notwithstanding the existence of an EUP, IBM argues that the subject goods cannot be classified as "office machines" under 676.30, TSUS. Plaintiff asserts that inherent in the definition of an office machine is the existence of a base, as described in headnote 2(a) of 676.30, TSUS. According to plaintiff, the subject goods do not have such a base and, therefore, General Rule of Interpretation ("GRI") 10(h)[2] cannot be used to classify the subject goods as unfinished office machines. Thus, plaintiff concludes that the subject goods should be classified as "parts of office machines" under 676.54, TSUS.

The Court is unpersuaded by plaintiff's arguments. The Court finds that headnote 2(a) does not preclude the subject goods from being classified as office machines. Rather, the Court finds that the term "base" in headnote 2(a) is descriptive, and not a limiting factor. Moreover, pursuant to GRI 10(h), the subject goods may be defined as "unfinished" office machines because they meet the test established in *Daisy–Heddon, Div. Victor Comptometer Corp. v. United States,* 66 C.C.P.A. 97, 600 F.2d 799 (1979). Since GRI 10(h) states that unfinished articles should be classified under the tariff descriptions for finished articles, the subject goods are correctly classified as unfinished "office ma-

chines not specially provided for," under 676.30, TSUS.

### A. Headnote 2(a) of 676.30, TSUS, does not preclude the subject goods from being classified as office machines.

The Court finds headnote 2(a) does not preclude the classification of the subject goods under Item 676.30, TSUS. Plaintiff claims that the subject Controllers and Drives cannot be classified as unfinished "office machines," under Item 676.30, TSUS, unless they have a "base" as stated in headnote 2(a).[3] Drawing on *Crabtree Vickers, Inc. v. United States,* 79 Cust. Ct. 60, 1977 WL 33052 (1977), plaintiff interprets "base" as a word of limitation, that requires a degree of completion. Plaintiff then asserts that the Controllers and Drives do not have a "base" when they are imported, and argues that they will never have their own bases because they will be mounted on a rack within a rack enclosure after importation. Pl.'s Mem. Supp. Mot. Summ. J. at 3. The Court is unpersuaded.

Plaintiff's arguments miss their mark: headnote 2(a)'s requirement of a base is a description of the end good, not a word of limitation. In *Crabtree Vickers,* the court held that GRI 10(h) did not apply to an item of the TSUS that expressly required the merchandise to be "engraved or otherwise prepared for printing." 79 Cust. Ct. at 61. Therefore, an unengraved plate could not have been considered unfinished under 10(h). *Id.* However, on its facts, the present case is unlike *Crabtree Vickers;* item 676.30, TSUS does not require a minimum degree of completion which would prevent the application of GRI 10(h).

After defendant filed its answer, this Court issued an opinion in which it defined the term "bases" as used in an unrelated subheading of the Harmonized Tariff Schedules of the United States. *See Universal Elect.,* —— Fed. Cir. (T) ——, 112 F.3d 488 (1997). In light of this opinion, defendant made a motion for leave to amend its answer to assert that the subject Controllers and Drives have a "base." The Court found the *Universal Elect.* definition of "bases" inapposite and denied defendant's motion by an Order dated July 23, 1996.

---

**2.** GRI 10(h) reads: "unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished."

**3.** In its answer to plaintiff's complaint, defendant admitted that the subject Controllers and Drives lack a "base" for the purposes of headnote 2(a), subpart G, part 4, schedule 6, TSUS. Headnote 2(a) defines "office machines" as devices which perform office work "and which have a base for fixing or placing them on a table, desk, wall, floor, or similar place."

Plaintiff then argues that to be classified as an office machine a device must have a "base" at time of importation because the language of headnote 2(a) is "have a base" rather than "have or will have a base." Yet plaintiff's argument proves too much. The language of headnote 2(a) is "used" rather than "used or will be used." Hence, were this Court to extend plaintiff's logic to the other descriptions of headnote 2(a), no device could ever be classified as an "office machine" unless at the time of importation it is already "used in offices, shops, [and] factories...." The absurdity of this result leads the Court to conclude that headnote 2(a) is satisfied if an office machine will have a "base" attached to it after importation.

Finally, the Court finds that a base is attached to the subject Controllers and Drives after they are imported, thereby satisfying headnote 2(a). Plaintiff mistakenly assumes that for the purpose of headnote 2(a), each office machine must have a separate and individual base. This assumption is unsupported, and the Court declines to accept such a narrow construction. Instead, the Court finds that the rack in which the subject Controllers and Drives are placed after importation is a "base" for the purposes of headnote 2(a) because it allows them to be placed on and/or fixed to the floor.

**B. General Rule Of Interpretation 10(h) may correctly be applied to item 676.30, TSUS.**

■ Schedule 6 of the TSUS does not have a tariff description for unfinished office machines. Item 676.30, TSUS, on its face, only covers office machines, and is silent on whether they are to be finished or unfinished. According to the Tariff Commission, this is exactly the situation in which GRI 10(h) may be applied:

> In the existing schedules some tariff descriptions provide for an article "whether finished or unfinished" or with words of similar purport, and other tariff descriptions are silent on the question.... The proposed headnote [GRI 10(h)] will bring about desirable clarity and uniformity in this regard.

Tariff Classification Study, Submitting Report to the President and the Chairman of the Committee on Ways and Means of the House and the Committee on Finance of the Senate, Nov. 15, 1960, at 19, *quoted in J. Gerber & Co. v. United States*, 62 Cust. Ct. 368, 370, 62 Cust.Ct. 368, 298 F.Supp. 516, 518 (1969). Therefore, the Court concludes that GRI 10(h) may be applied to Item 676.30, TSUS, since this case is the type of situation envisioned by the Tariff Commission. The only remaining issue is whether the subject goods satisfy the definition of unfinished under GRI 10(h).

**C. The subject goods are unfinished for the purposes of GRI 10(h).**

■ To decide whether an article is unfinished, both this Court and the Federal Circuit have followed the test established in *Daisy–Heddon*, 66 C.C.P.A. 97, 600 F.2d 799 (1979). *See, e.g., Simod America Corp. v. United States*, 7 Fed. Cir. (T) 82, 872 F.2d 1572 (1989), *XTC Products, Inc. v. United States*, 15 CIT 348, 771 F.Supp. 401 (1991). The court in *Daisy–Heddon* evaluated the following five factors in order to decide whether an import was an unfinished article: (1) how the number of omitted parts compares to the number of included parts; (2) how the amount of time and effort required to complete the article compares to the amount of time and effort it took to produce the imported article; (3) how the cost of the included parts compares to the cost of the omitted parts; (4) how significant the omitted parts are to the overall functioning of the completed article; and (5) how trade practice characterizes the article, e.g., finished or unfinished. *Daisy–Heddon*, 66 C.C.P.A. at 102, 600 F.2d at 803. The court in *Daisy–Heddon* cautioned that these factors do not constitute a formal test, and that the relevance of each factor turns on the facts of the particular case. *Id.*

The Court finds that several *Daisy–Heddon* factors indicate that the subject Controllers and Drives are unfinished office machines. First, when they are imported, both the Controllers and the Drives contain more components than they omit. For example, each Controller incorporates six components: (1) a system adapter; (2) a microprocessor;

(3) random access read/write memory and read only storage; (4) a device adapter composed of a device interface adapter and a device read/write adapter; (5) cooling equipment; and (6) front and back control panels. Each Drive incorporates five components: (1) a disk enclosure comprising three disks; (2) 12 read/write heads; (3) the disk spindle of the drive motor; (4) two actuators; and (5) combined main air and breather filter. Each Controller and each Drive lack only a base, cable carriers, and the slide assemblies required for the rack-mounting.

Second, completing the Controllers and Drives requires significantly less time and effort than the time and effort needed to manufacture them to their imported form. Third, the omitted parts are currently cheaper than the parts already included in the Controllers and Drives, and will likely remain cheaper for the foreseeable future.[4] Thus, the Court concludes that the subject Controllers and Drives are classifiable as unfinished "office machines," under Item 676.30, TSUS.

### III. The Subject Controllers And Drives Would Not be More Correctly Classified Under Item 676.54, TSUS, As "Parts" Of Office Machines.

Plaintiff claims that Customs should have classified the subject merchandise under Item 676.54, TSUS, as "parts of automatic data-processing machines." Pl.'s Mot. Summ. J. at 12. Plaintiff supports its claim under the criteria that this Court developed in *Sumitomo Corporation Of America v. United States,* 855 F.Supp. 1283, 18 C.I.T. 501 (1994) (holding that voice coil positioning devices are "parts of automatic data processing machines" under 676.54, TSUS). Pl.'s Mot. Summ. J. at 12.

However, when an article is described by more than one provision of the TSUS, it should be classified under the provision that describes it most specifically. GRI 10(c). Additionally, a provision for "parts" of

an article covers a product solely, or chiefly, used as a part of such article, but does not prevail over a specific provision for such part. GRI 10(ij). The term "specific provision" in GRI 10(ij) applies to a tariff provision which describes an article by either name, specific function, or generic term. *Norman G. Jensen, Inc. v. United States,* 77 Cust. Ct. 9, 21, 1976 WL 29303 (1976).

The Court finds that the term "office machines," as used in Schedule 6, Part 4, Subpart G of the TSUS is a "specific provision" for the purpose of 10(ij) because it refers to both the name and specific function of the subject goods. Item 676.30, TSUS, is not too broad to qualify as a "specific provision" because headnote 2(a) narrows its scope in three ways: it limits where the machine may be used; it limits what types of machines qualify; and it requires that an "office machine" have a "base" either before or after importation. *Compare with Mitsubishi Intern. Corp. v. United States,* 17 CIT 871, 884, 829 F.Supp. 1387, 1397 (1993) (holding that a provision for "lifting, handling, loading, or unloading machinery" is too broad to qualify as "specific provision").

Hence, this Court finds that even if the subject merchandise can be described under Item 676.54, TSUS, the subject Controllers and Drives are more specifically described by Item 676.30, TSUS. Thus, even if the subject goods could be defined as parts, the application of 10(ij) leads 676.30, TSUS, to prevail over the provision for "parts," Item 676.54, TSUS.

### CONCLUSION

For the foregoing reasons, the court holds that the subject Controllers and Drives are properly classified under 676.30, TSUS. Judgment will be entered accordingly.

4. The Court notes that it does not need to examine the last two *Daisy–Heddon* factors. In *Simod America,* 7 Fed. Cir. (T) at 90, 872 F.2d at 1578, the Federal Circuit found that under GRI 10(h), even the fourth factor, the absence of an essential part, would not preclude the classification of an article under the provision for the completed article. As for the fifth factor, neither party has presented any evidence of how the trade regards the subject merchandise.